UNITED STATES of America,
Plaintiff-Appellee,

v.

Arthur Cecil BROM, Roger Allen Hale, and Willard Timothy Moore, Defendants-Appellants.

No. 76–1062.

United States Court of Appeals, Fifth Circuit.

Nov. 12, 1976.
Rehearing Denied Dec. 9, 1976.

Brady S. Coleman, Austin, Tex., for defendants-appellants.

Edward B. McDonough, Jr., U. S. Atty., Mary L. Sinderson, George A. Kelt, Jr., James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before AINSWORTH and RONEY, Circuit Judges, and ALLGOOD, District Judge.

RONEY, Circuit Judge:

Having been convicted of various crimes involving importation and possession of marijuana, these three defendants contend that the incriminating contraband was the product of a warrantless station wagon search not justified by probable cause or as a border search. The search involved two cars, only one of which was known to have crossed the border. We can pretermit a decision as to probable cause because the facts are sufficiently similar to those in *United States v. Flores,* 531 F.2d 222 (5th Cir. 1976), to require a holding that the search and seizure of both cars was lawful as an extended border search. This being the only issue on appeal, the convictions are affirmed.

A recitation of the somewhat involved facts concerning the search is sufficient to show the application of the recent *Flores* decision to this case. On February 15, 1975, at approximately 7:30 p. m., Bonnie Jean Reynolds, who was driving a 1972 Ford Pinto automobile, crossed the International Bridge at Laredo, Texas. At the border a customs inspector detected the odor of marijuana emanating from the interior of the car. A trained dog also reacted positively to the odor. A thorough search of the car and a strip search of Ms. Reynolds was then conducted, but no contraband of any kind was found. The inspector did observe, however, an open box of green garbage bags, often used to transport narcotics. After two hours and forty-five minutes, Ms. Reynolds was allowed to proceed, although she was placed under surveillance at the inspectors' request.

A customs inspector and an agent initiated a "tail out" and followed Ms. Reynolds north to a Gulf Service Station and then to the Border Patrol Immigration checkpoint, ten miles from Laredo, where she was routinely checked through. Soon thereafter, she reversed direction and headed south toward Laredo again. The agents temporarily lost sight of her, but promptly located her again at the El Rey Motor Hotel in Laredo, in front of room 109. After about forty-five minutes, she left and made two trips to a McDonald's Restaurant and then returned to room 109. Soon afterward Ms. Reynolds and two men, later discovered to be defendants Moore and Hale, drove to Wagner's Cafe, where she met defendant Brom, who had driven up in a Ford station wagon. He joined the three occupants in the Pinto and conversed with them for ten to fifteen minutes. Ms. Reynolds and her two companions returned to the hotel, and Brom left in the station wagon in a southward direction.

Shortly after 1:00 a. m. Brom, who had reversed direction, arrived at the Passport Inn, parked his station wagon, and walked across the street to room 109 at the El Rey. While Brom was at the El Rey, an agent looked into the station wagon and saw eight uncovered bundles wrapped in green garbage bags in the rear of the station wagon.

At about 6:00 a. m., a man left room 109 and drove the Pinto north to the checkpoint, where he was momentarily stopped and then allowed to proceed. The checkpoint was being dismantled at that time. The Pinto was followed in the same direction another eight miles. It turned around and returned to the El Rey. The station wagon was at the El Rey when the Pinto arrived. Five or ten minutes later both vehicles left the motel with two defendants in each car. After travelling about five minutes in a northward direction, the cars stopped and one of the defendants in each of the cars exchanged

places. Shortly thereafter all four defendants were arrested. A search of the station wagon, which was occupied by Brom and Hale, revealed approximately 117 pounds of marijuana.

These facts are unlike those in *United States v. Bursey*, 491 F.2d 531 (5th Cir. 1974), upon which appellants rely. In *Bursey*, the Court invalidated a search conducted four days after the border crossing at a mobile checkpoint located 100 miles from the border. Surveillance of the searched vehicle had been broken for protracted periods. The evidence revealed no connection whatsoever between this vehicle and the border. Surveillance of the searched vehicle began three days after the border crossing upon an informant's tip that the defendants intended to obtain narcotics. The agents then determined that the defendants were the same individuals who had crossed the border three days earlier. Under these circumstances, the Court found that the nexus with the border had been dissipated.

The facts of this case, however, require us to apply the reasoning of Judge Godbold in *Flores*, which upheld as an extended border search a warrantless search of a second automobile, even though the automobile was not known to have crossed the border and even though several hours had elapsed since the first automobile had crossed the border. The Court held that this search was a border search in view of the overall nexus with the border, the proximity of the activity with the border, the ongoing surveillance and activities that had been observed, and the contacts of the second automobile and its occupants with the first automobile and its occupants.

Although the Ford station wagon in this case was not known to have crossed the border, there was a sufficient nexus with the border for the search to be considered an extended border search valid under the Fourth Amendment. Defendant Reynolds was observed to have crossed the border, where an examination of her car revealed the odor of marijuana. From the time of the inspection until the time of her arrest, she was kept under nearly constant surveillance. During that period she was repeatedly observed with the other three defendants. During their surveillance, the Government agents observed activities that contributed to their suspicions. The defendants were seen driving past the checkpoint, apparently for the purpose of inspecting it; the green garbage bags, which were filled, were observed in the back of the station wagon; the cars left the motel simultaneously and two of the defendants switched places. Based on the continuous surveillance of the defendants and the two cars, the suspicious activities that were observed, the contacts between the Pinto and the Ford station wagon, and the proximity of Laredo to the border, the search of the station wagon qualifies as an extended border search under *Flores*.

AFFIRMED.