**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Chester Lee ADAMS,**
**Defendant-Appellant.**

**No. 77–5398**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

March 17, 1978.

Bill G. Alexander, Odessa, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., Le Roy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before MORGAN, CLARK and TJOFLAT, Circuit Judges.

PER CURIAM:

The appellant, Chester Lee Adams, was convicted in the district court for possession of a controlled substance (marijuana) with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1970). The sole question presented in this appeal is whether the warrantless search of appellant's vehicle that uncovered the marijuana qualifies as a border search. We find that it does and affirm.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

The search took place on the morning of January 13, 1977, in the wilderness of Big Bend National Park after United States Customs officers, on a routine patrol, stopped a camper a short distance from the Rio Grande River. The stop took place on River Road, a narrow dirt and gravel road that approximately parallels the Rio Grande and intersects with several dirt roads that lead to it. The officers suspected that the camper had just crossed the Rio Grande from Mexico, probably at the nearby San Vincente Crossing where the water depth was only 2.5 to 3 feet, because the tires and fenders of the pick-up truck, on which the body of the camper rested, were splashed with fresh mud. The mud was thought by the officers to be from the river because the mud resembled that found in the river bed. Moreover, there had been no measurable rainfall in the area during the preceding thirty days, thus making it unlikely that the mud had come from someplace else.

Officer Wayne Winn, Jr., who was in charge of the patrol, identified himself to the driver of the camper and its only occupant, the appellant, and asked whether the camper had just crossed the Rio Grande from Mexico. The appellant replied that the camper had been in the river but not across it. Winn also asked appellant who owned the camper, and appellant stated that it belonged to a friend. At this point, Winn dispatched the other officers to run a license-plate check so the ownership of the vehicle could be determined.

While the other officers were gone, Winn commenced a preliminary border search of the truck and camper. In the process he observed a shoulder holster on the front seat of the pick-up, and asked the appellant whether he was armed. Appellant produced a loaded 9 mm pistol and, at Winn's direction, unloaded the pistol and placed it in a suitcase. Continuing the search, officer Winn noticed a large metal box that covered the entire bed of the pick-up truck. Appellant explained that the box was actually a tank utilized for hauling fuel oil. Two short pipes, extending upward from the rear of the tank, seemed, on inspection, to be suitable for receiving oil. But it appeared that those pipes could not be used to take oil from the tank because of the presence of metal screens welded to the bottoms of the pipes which would preclude the insertion of a nozzle or other apparatus to remove the oil. Winn was still in the process of inspecting the tank when the other officers returned to say that through the license-plate check they had identified the owner of the vehicle as Alberto Juarez of Dallas, Texas, a person suspected of gun smuggling. The inspection of the tank was resumed, but the officers were still unable to determine how oil could be removed from it. When the appellant was unable to offer a satisfactory explanation, Winn decided to move the vehicle to the park maintenance shop where tools would be available to aid in the completion of the customs inspection. At the maintenance shop it was discovered that the oil tank was nothing more than a false bottom of the bed of the pick-up truck that served as a cache for 443 pounds of marijuana. The appellant was immediately placed under arrest.

The crux of appellant's attack on the validity of the search is his contention that the search did not take place at the border or its functional equivalent. That being so, he argues, the search must fail because, as the government concedes, it is not supported by probable cause. The argument does not persuade us. We think the objective facts in this case enabled the Customs officers to conclude that there was a "high degree of probability that a border crossing took place" *United States v. Brennan,* 538 F.2d 711, 715 (5th Cir. 1976), *cert. denied,* 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538 (1977), and that a border search was in order. It seems to us that the Customs officers were as reasonably certain about the crossing in this case as they were in *United States v. Ivey,* 546 F.2d 139 (5th Cir. 1977), *cert. denied,* 431 U.S. 943, 97 S.Ct. 2662, 53 L.Ed.2d 263 (1977). Consequently, we view the inspection of appellant's vehicle as a search at the border. The Customs officers had a right to make it without probable cause or any degree of suspicion. *See United States v. Brignoni-Ponce,* 422

U.S. 873, 887, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (Rehnquist, J., concurring); *United States v. Ivey,* 546 F.2d at 144; *United States v. Himmelwright,* 551 F.2d 991, 993–94 (5th Cir. 1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977).

AFFIRMED.