**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Efren FONTECHA, Defendant-Appellant.**

**No. 77–5673.**

United States Court of Appeals, Fifth Circuit.

July 12, 1978.

Juan P. Gonzalez (Court-Appointed) Corpus Christi, Tex., for defendant-appellant.

J. A. Canales, U. S. Atty., John Potter, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., Robert A. Berg, Asst. U. S. Atty., Corpus Christi, Tex., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

SIMPSON, Circuit Judge:

The critical question raised by this appeal is whether, in view of the circumstances present, the warrantless search of a suitcase located in the backseat of appellant's automobile at a permanent Mexican border checkpoint violated the Fourth Amendment. We find that the record demonstrates that both probable cause and exigent circumstances were present and uphold the search. Affirmance of appellant's conviction follows.

## I. THE FACTS

At 3 a. m. on June 25, 1977, Royce Hagood, an experienced United States Border Patrol Agent, and his partner were on duty at the permanent checkpoint seven miles south of Falfurrias, Texas, on U.S. Highway 281. At that time, Hagood observed from its lights that a subcompact Toyota drove north on 281 to within one half mile of the lighted checkpoint, made a U-turn, and proceeded at a high rate of speed in the opposite direction. Hagood immediately entered his patrol car and, with his overhead lights flashing, chased the Toyota at 100 miles per hour, stopping it four miles south of the checkpoint. As he approached the stopped car, Hagood detected the strong odor of marihuana, with which odor he was familiar. He instructed the driver of the car, Efren Fontecha, to get out. Hagood then looked inside the car and observed a suitcase on the backseat and a passenger sitting on the front seat. Without speaking to the passenger, Hagood reached into the backseat, opened the unlocked suitcase and discovered that it contained approximately 95 pounds of marihuana. Hagood then placed both men under arrest and instructed Fontecha to drive his Toyota back to the checkpoint while the passenger rode with Hagood in the patrol car. It is unclear from the record whether Hagood placed the suitcase in his patrol car at this point or left it in the Toyota with Fontecha.

Fontecha was indicted for possession of marihuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He waived his right to a jury trial and stipulated to all relevant facts, basing his defense solely on the contention that the evidence against him was seized in violation of the Fourth Amendment. The trial court denied Fontecha's motion to suppress and entered a judgment of guilty on October 6, 1977. This appeal from the judgment of conviction followed.

## II. VALIDITY OF THE SEARCH

Fontecha first contends that the stop of his car by Agent Hagood four miles south of the Falfurrias checkpoint was unconstitutional. Our recent decision in *United States v. Macias*, 546 F.2d 58 (5th Cir. 1977), controls this point. In *Macias*, as here, "[a]lthough the stop did not physically occur right at the checkpoint, the defendants had already stopped themselves long enough to make a U-turn and clear out at high speed". On this basis, we concluded that the stop "did begin . . . at a permanent checkpoint, although the defendants delayed its accomplishment by running away". Stops at permanent checkpoints may "be made in the absence of any individualized suspicion . . . ." *United States v. Martinez-Fuerte*, 428 U.S. 543, 562, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976). Furthermore, if we view Hagood's actions four miles south of the checkpoint as those of a roving patrol, the stop would still pass muster. "Under *United States v. Brignoni-Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975), a particular vehicle may be stopped when the observations of a roving patrol create a 'reasonable suspicion' that illegal activity is occurring". *Macias, supra*, 546 F.2d at 62. The

Court in *Brignoni-Ponce* specifically noted that "erratic driving or obvious attempts to evade officers can support a reasonable suspicion". 422 U.S. at 884, 95 S.Ct. at 2582. We hold that the stop of Fontecha's vehicle was justified by its obvious attempt to evade the Falfurrias checkpoint.

It is also clear that the warrantless search of a vehicle at a permanent checkpoint is justified if based upon probable cause. *United States v. Ortiz*, 422 U.S. 891, 896–97, 95 S.Ct. 2585, 2598, 45 L.Ed.2d 623 (1975). Extensive case law in this Circuit establishes that the odor of marihuana emanating from an automobile furnishes probable cause to search the vehicle. See, e. g., *United States v. Andrade*, 545 F.2d 1032 (5th Cir. 1977); *United States v. Bazan-Molina*, 544 F.2d 193 (5th Cir. 1976); *United States v. Coffey*, 520 F.2d 1103 (5th Cir. 1975); *United States v. Santibanez*, 517 F.2d 922 (5th Cir. 1975).

The more difficult question in this case is whether the circumstances justifying a warrantless search of the vehicle also justified a contemporaneous warrantless search of luggage found inside the vehicle. Prior to the Supreme Court's decision in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), we would have felt confident in holding that this issue is controlled by *United States v. Soriano*, 497 F.2d 147 (5th Cir. 1974) (en banc), in which the search of luggage removed from a taxicab hired by the defendants was upheld on the basis of the general automobile search exception to the warrant requirement.[1] See *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In *Soriano*, we explained that

> though it is true that the Court [in *Chambers v. Maroney, supra* ] spoke of an automobile while we treat of containers in or just removed from one, the principle is not different. The officers who arrested Soriano and his companions indisputably had probable cause to believe that the vehicle contained contraband, a circumstance justifying the initial incursion [that revealed luggage in] the trunk. Under established law in this circuit and elsewhere, this justification encompassed the search of containers in the vehicle which could reasonably be employed in the illicit carriage of the contraband. See, e. g., *United States v. Halliday*, 487 F.2d 1215 (5th Cir. 1973); *United States v. Chapman*, 474 F.2d 300 (5th Cir. 1973); *United States v. Evans*, 481 F.2d 990, 994 (9th Cir. 1973).

497 F.2d at 149.

In *Chadwick*, the Supreme Court held unconstitutional the warrantless search of a footlocker removed by federal agents from the trunk of a taxicab and transported to a Boston federal building prior to the search. Although the agents had probable cause to suspect that the footlocker contained contraband, their failure to secure a warrant was deemed fatal. The Court distinguished between automobile searches and searches of luggage in this way:

> The factors which diminish the privacy aspects of an automobile do not apply to respondents' footlocker. Luggage contents are not open to public view, except as a condition to a border entry or common carrier travel; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile.

> Nor does the footlocker's mobility justify dispensing with the added protections of the Warrant Clause. Once the federal

---

1. In *United States v. Montgomery*, 558 F.2d 311 (5th Cir. 1977), we held that *Soriano* controlled on the question of a search of luggage removed from the baggage compartment of an airplane. The search in *Montgomery* took place prior to the publication of *Chadwick* on June 21, 1977.

Because we held that *Chadwick* is not to be applied retroactively, we expressly pretermitted a resolution of the effect, if any, of *Chadwick* on *Soriano*. The search in the instant case took place on June 25, 1977, four days after *Chadwick* had been announced.

agents had seized it at the railroad station and had safely transferred it to the Boston federal building under their exclusive control, there was not the slightest danger that the footlocker or its contents could have been removed before a valid search warrant could be obtained. The initial seizure and detention of the footlocker, the validity of which respondents do not contest, were sufficient to guard against any risk that evidence might be lost. With the footlocker safely immobilized, it was unreasonable to undertake the additional and greater intrusion of a search without a warrant.

433 U.S. at 13–14, 97 S.Ct. at 2484–85 (footnotes omitted). Ultimately, the Court held:

Even though on this record the issuance of a warrant by a judicial officer was reasonably predictable, a line must be drawn. In our view, when no exigency is shown to support the need for an immediate search, the Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of the police authority.

Id. at 15, 97 S.Ct. at 2486.

Arguably, *Soriano* and its progeny [2] stand unaffected by *Chadwick*. In *Soriano*, we expressly reserved the question later presented in *Chadwick*, but intimated a resolution of that question in apparent conflict with *Chadwick*: "We deal here with one continuous action, homogeneous in character. Had the luggage been taken elsewhere to be searched at leisure, the failure to utilize that leisure to apply to a magistrate might be a factor in the reasonableness calculus, though *Chambers* dealt with, and permitted, just such a search in the circumstances there presented". 497 F.2d at 150 n.6. Indeed, the district court in *Chadwick* distinguished *Soriano* in holding that the nexus between the footlocker and the automobile was merely incidental. *United States v. Chadwick*, 393 F.Supp. 763, 771–73 (D.Mass.1975). Furthermore, as we noted in *United States v. Montgomery*, 558 F.2d

311 (5th Cir. 1977), *Chadwick* "specifically refers to the Government's failure to contend that the general automobile search reasoning should apply, apparently since the footlocker had been placed in the trunk of the car only just before its seizure".

Nevertheless, *Chadwick* contains language which conceivably could affect our prior decisions in this area. Both *Soriano* and our later en banc case, *United States v. Hand*, 516 F.2d 472 (5th Cir. 1975), were based, in large measure, upon a single passage in *Chambers v. Maroney, supra*:

Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the "lesser" intrusion is permissible until the magistrate authorizes the "greater". But which is the "greater" and which the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

399 U.S. at 51–52, 90 S.Ct. at 1981. Although *Maroney* dealt only with the search of an automobile, this Court extended its rationale to the search of luggage in *Soriano* and of a woman's purse in *Hand*. However, language in *Chadwick* suggests that our extension of *Maroney* was unwarranted:

Respondents' principal privacy interest in the footlocker was of course not in the container itself, which was exposed to public view, but in its contents. A search of the interior was therefore a far greater intrusion into Fourth Amendment values than the impoundment of the footlocker. Though surely a substantial in-

---

**2.** See, e. g., *United States v. De La Fuente*, 548 F.2d 528 (5th Cir. 1977); *United States v. Hand*, 516 F.2d 472 (5th Cir. 1975) (en banc).

fringement with respondents' use and possession, the seizure did not diminish respondents' legitimate expectation that the footlocker's contents would remain private. *It was the greatly reduced expectation of privacy in the automobile, coupled with the transportation function of the vehicle, which made the Court in Chambers [v. Maroney] unwilling to decide whether an immediate search of an automobile, or its seizure and indefinite immobilization, constituted a greater interference with the rights of the owner. This is clearly not the case with locked luggage.* 433 U.S. at 13 n.8, 97 S.Ct. at 2485 n.8 (emphasis added).

Arguably, then, *Chadwick* leaves room for reaffirmation of our earlier holdings that a generalized automobile exemption from the warrant requirement applies with equal force to luggage found within an automobile. We decline to construe *Chadwick* in this manner because language in that opinion suggests that a reexamination of our earlier holdings should be undertaken in the appropriate case. We uphold the search in this case on more narrow grounds.

 It is well recognized that "[w]hen the police possess probable cause to conduct a search, but, because of exigent circumstances, do not have time to obtain a warrant, they may search without a warrant". *United States v. Juarez*, 573 F.2d 267, 274 (5th Cir. 1978). See *Roaden v. Kentucky*, 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973). *Chadwick* reaffirmed this basic principle, limiting its holding to

cases in which "no exigency is shown to support the need for an immediate search". 433 U.S. at 15, 97 S.Ct. at 2486. Under the facts of the instant case, exigent circumstances are manifest. A single border patrol agent confronted two suspects in an automobile in an unpopulated area at 3 a. m. We recognize, of course, that regardless of whether the suitcase was searched at that point or later, this lone agent still had to perform the dangerous task of arresting the two suspects and transporting them back to the checkpoint, assuming that their flight from the checkpoint and the agent's subsequent detection of the odor of marihuana furnished probable cause to arrest.[3] Conceivably, then, Agent Hagood could have merely seized the suitcase and later have obtained a warrant. But it is only through the luxury of hindsight that we know that Hagood was able safely to transport the suspects and the suitcase back to the checkpoint. At the time that Hagood stopped Fontecha's car, he had no way of knowing what dangers, if any, he faced or what plans the two occupants of the car might have had for disposing of evidence.[4] This two-on-one confrontation involving an automobile on a deserted road furnished sufficient exigent circumstances—judged as of that time and not in light of subsequent events—to justify an immediate search based upon probable cause but without a warrant.[5]

To reiterate, we hold only that this case falls squarely within the exception expressly recognized in *Chadwick* in that exigent circumstances supported the need for an immediate search. We do not hold that

3. We raise this point in part because of Agent Hagood's erroneous belief that had he not searched the suitcase, he would have had no basis upon which to arrest Fontecha and his passenger. At the suppression hearing, Hagood testified: "I would have had no reason to take the people into custody if I hadn't already examined the contents of the suitcase". T. 27.

4. This rationale is analogous to that which underlies the rule that no warrant is required for searches incident to lawful custodial arrests. *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973). Because the search in the instant case preceded

the arrest, we have no occasion to consider the search incident to arrest exception to the warrant requirement. In such cases, "[i]t is the fact of the lawful arrest which establishes the authority to search". *Id.*

5. Arguably, Hagood could have enlisted the aid of his partner on duty at the checkpoint. However, this would have left the checkpoint unmanned at a time when there was traffic, albeit light, on the highway. T. 14. We therefore conclude that Hagood did not act unreasonably in making the stop, search, and arrest on his own.

transportation of luggage in an automobile *per se* constitutes exigent circumstances justifying the type of warrantless intrusion otherwise proscribed by *Chadwick.* Cf. *Sanders v. State,* 559 S.W.2d 704 (Ark.1977). Nor do we reach the issue of when "the property to be searched comes under the exclusive dominion of the police authority", the second express limitation stated in *Chadwick.*[6] We uphold the search in this case on the narrowest ground possible, saving for another day and another case the reexamination of our earlier holdings in the light of *Chadwick.*

The judgment of conviction appealed from is

AFFIRMED.

---

**6.** In denying Fontecha's motion to suppress, the trial court held that at the time of the search the suitcase was not in the "exclusive dominion" of Agent Hagood, noting that the search in *Chadwick* took place in a federal building an hour and a half after the initial seizure. We express no view on this aspect of the trial court's holding since we affirm on the basis of exigent circumstances.