**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Donald Wayne BARBIN,**
**Defendant-Appellant.**

No. 84–2244
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Sept. 24, 1984.

---

Lawrence A. Walsh, Brownsville, Tex., for defendant-appellant.

Daniel K. Hedges, U.S. Atty., James R. Gough, John P. Smith, Jack Wolfe, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before WILLIAMS, JOLLY, and HILL, Circuit Judges.

ROBERT M. HILL, Circuit Judge:

Donald Wayne Barbin, defendant, in a two count indictment was charged with importing and possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 952(a). Barbin filed a motion to suppress evidence from an alleged warrantless search and seizure of a motor vehicle and the sailboat it was towing which contained about 435 pounds of marijuana. After an evidentiary hearing, the district court denied the motion. Barbin thereafter pleaded guilty to the possession count. The importing count was dismissed on the government's recommendation. Barbin's plea was made pursuant to a plea bargain in which he reserved the right to appeal and challenge the district court's denial of the motion to suppress. Fed.R. Crim.P. 11(a)(2). Should he be successful on this appeal, he would then have the right to withdraw his plea. *Id.* Barbin has filed a timely notice of appeal contending that the search and seizure in question was unreasonable and in violation of the Fourth Amendment of the United States Constitution. After a review of the record, we conclude that the district court correctly disposed of Barbin's motion to suppress and that his conviction should be affirmed.

## A. Suppression Hearing

The following evidence was introduced at the suppression hearing. A United States Customs Patrol Officer testified that on December 5, 1983, at approximately 6:00 p.m., in a telephone call, he "received information from a previously reliable informant that a load of marijuana was to be smuggled into the United States at the Rio Grande River, mouth of the river." The officer testified that the specific information was that "a brown Jeep Cherokee was towing a trailer with a yellow sailboat on it, approximately 18 feet long." The driver of the motor vehicle was also described with specificity—as "a tall anglo male, wearing thick glasses, and [a] big, thick mustache." The marijuana, about 450 pounds, was said to be concealed in the hull of the sailboat. The vehicle and sailboat were said to be in the Matamoros, Tamaulipas, area of Mexico. Although the officer did not know from where the informant was calling, or how he had obtained his information, he thought that the informant generally was in Matamoros. The next morning at approximately 8:30 a.m., the officer received additional information in another telephone call from the informant that the vehicle and sailboat had reached the mouth of the river on the Mexican side of the border and a crossing of the border was to be made at this point. The officer had previously paid the informant for information and had used him about 15 times. Some of the information he received had proved incorrect, but about 10 or 12 arrests and convictions had resulted from the informant's information.

Two other customs officers, notified of the information received, were immediately dispatched to the mouth of the river area. They observed a brown Jeep Cherokee towing a boat traveling west on Highway 4 about 1 mile east of its intersection with Farm Road 1419. Highway 4 is a paved roadway that leads in an easterly direction from Brownsville, Texas, to a beach close to the mouth of the Rio Grande. To the north Highway 4 is bordered by the Port of Brownsville Ship Channel; to the south it is bordered by the twisting bends of the Rio Grande River. Traveling west on Highway 4 from the beach area, Farm Road 1419 is the first paved road encountered that extends in a north-south direction to the river. A stop of the vehicle and sailboat was made shortly thereafter, about 25 miles from the border. The vehicle, sailboat and Barbin, who was driving the vehicle, matched the description given by the informant. After the sailboat was taken to the gateway bridge and subjected to a dog sniffing test which was positive, the officers broke into the left side well and found the marijuana. The trailer and sailboat had sand on their undersides and the trailer tongue had "river type mud" on it. The sailboat also displayed where it had recently been repaired and freshly repainted in the area of the well. The sailboat also had the appearance of not having been used in a long time, contrary to Barbin's statement that it had been used the day before. A later investigation by officers at the mouth of the Rio Grande River disclosed tire tracks which matched the tires on the vehicle and "where a tongue of a trailer had been drugged [sic] across." The officers concluded that the sailboat and trailer were floated across the river at this point. The officers testified that they did not obtain a search warrant because they were conducting a customs border search.

## B. Warrantless Searches and Seizures

"In general, warrantless searches and seizures are unreasonable under the fourth amendment except those falling within a few narrowly defined exceptions." *United States v. Niver*, 689 F.2d 520, 525 (5th Cir.1982), (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). The district court, in denying Barbin's motion for the suppression of evidence obtained in a warrantless search and seizure relied on two exceptions: (1) a warrantless search of an automobile based on probable cause and (2) a warrantless border search. Barbin contends that the facts of his case do not support either exception to the prohibition against warrantless searches and seizures.

(1) *Automobile Exception*

(a) Probable cause to search

"[P]olice officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the automobile that is as thorough as a magistrate could authorize by warrant." *United States v. Mendoza,* 722 F.2d 96, 100 (5th Cir.1983) (citing *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). This Court implied in *Mendoza* that if probable cause for a search exists, the officers need not apply for a warrant after detaining an automobile. *See* 722 F.2d at 102 n. 6; *cf. United States v. Ross,* 456 U.S. at 807 n. 9, 102 S.Ct. at 2163 n. 9, (constitutional warrantless seizure may permit immediate or subsequent warrantless search).

■ The probable cause necessary for a warrantless search is to be determined by the same standard as that for issuance of a warrant. *United States v. Mendoza,* 722 F.2d at 100 n. 5; *United States v. Cisneros-Mireles,* 739 F.2d 1000 (5th Cir.1984). That standard has been articulated in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The *Gates* standard also applies retroactively. *United States v. Mendoza, supra, on rehearing,* 727 F.2d 448 (5th Cir.1984). Affidavits based on an informant's tip are

> "to be evaluated in the light of the 'totality of the circumstances.' 'The task of the issuing magistrate is simply to make a practical commonsense decision whether, given all the circumstances set forth in the affidavit ..., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband ... will be found in a particular place....' "

*United States v. Phillips,* 727 F.2d 392, 395 (5th Cir.1984), (quoting *Illinois v. Gates,* 103 S.Ct. at 2232). The *Gates* standard permits a finding of probable cause even if both the informant's personal relia-

bility and the basis of the tip are not established since " 'a deficiency in one may be compensated for, in determining the overall reliability of a tip, *by a strong showing as to the other,* or by some other indicia of reliability.' " *Id.* (quoting *Illinois v. Gates,* 103 S.Ct. at 2329) (Emphasis in original).

■ In the present case, absolutely no indication of the basis of the informant's knowledge was given to the authorities. However, the customs officer contacted had previously relied on information from the informant in question about fifteen times resulting in several arrests and convictions. This Court has recognized the continuing applicability of the *Aguilar-Spinelli* precedents [1] in considering the basis of knowledge or the veracity aspect of a probable cause determination. *United States v. Phillips,* 727 F.2d at 395–96. As to an informant's veracity, which would be the major basis for a probable cause finding in this case, this Court has held that "[t]he naming of informants places no facts relevant to their trustworthiness before the magistrate." *Id.* at 396. Thus, it is not relevant that the informant was not identified. The credibility of an informant is most commonly assessed from the accuracy of previous tips. *Id.* For example, in *United States v. Tucker,* 526 F.2d 279, 281 n. 3 (5th Cir.), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1738, 48 L.Ed.2d 203 (1976), an informant deemed reliable had provided at least ten tips which had proven accurate through other sources or independent information. If this Court were reviewing a magistrate's determination of probable cause, the present confidential informant's tip, given his past accuracy and the specificity of his present information, could provide a "substantial basis" for a conclusion of probable cause. *See United States v. Phillips,* 727 F.2d at 395.

Barbin argues that even if the search of the automobile was not unreasonable, searching the sailboat was unreasonable since it was neither a container nor an extension of a motor vehicle. The specific

---

**1.** *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

holding in *Ross* was that police officers, having probable cause to believe a vehicle contains contraband, "may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched.'" 456 U.S. at 800, 102 S.Ct. at 2159. While boats moving under their own power have historically been part of the automobile exception to warrantless searches, 456 U.S. at 806, 102 S.Ct. at 2163, in this case the sailboat was being towed by the automobile. In view of the information given to the customs officer that the marijuana was concealed in the hull of the sailboat, had a warrant issued in this case particularly describing the place to be searched, it would (or at least should) have specified that the hull of the boat be subject to the search. The hull was the appropriate place to search for the marijuana. Thus, probable cause for a search of the hull of the sailboat existed.

### (b) Exigent circumstances

It remains necessary, nevertheless, to justify conducting the search without a warrant. Barbin points out that not even a telephonic warrant was requested despite the availability of a magistrate familiar with the procedures for telephonic warrants pursuant to Fed.R.Crim.P. 41(c). "The legislative history reflects that an important purpose for the rule was to encourage law enforcement personnel to obtain warrants." *United States v. Berick,* 710 F.2d 1035, 1038 (5th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 255, 286, 78 L.Ed.2d 263 (1983). The stipulated evidence establishes that a telephonic warrant could have been obtained by the customs officers. They did not do so because they deemed the search to be a border search. If the conviction is to be affirmed based on *Ross,* it must be shown both that the factual situation is not distinguishable from *Ross* and that despite the exigencies of the situation not precluding obtaining a telephonic warrant, *Ross* should be extended or interpreted to mean that a telephonic warrant need not be obtained. Although the factual situation differs from *Ross* in that a sailboat, which is neither a container nor an

extended cargo area, was searched, as discussed above, the difference in the location searched does not make *Ross* inapplicable.

However, *Ross* makes no reference to telephonic warrants nor have any cases been found following *Ross* that involve telephonic warrants. An en banc decision by this Court preceding *Ross* noted that exigent circumstances may render a warrantless automobile seizure and search constitutional. *See United States v. Mitchell,* 538 F.2d 1230, 1233 (5th Cir.1976) (en banc), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1578, 51 L.Ed.2d 792 (1977). The "automobile" exception may be viewed as inherently presenting exigent circumstances because of the mobility of an automobile under the control of a driver. *See, e.g., United States v. Ross,* 456 U.S. at 806, 102 S.Ct. at 2163. As pointed out by Justice Marshall in his dissent in *Ross,* if a vehicle is in the exclusive control of the authorities, "any subsequent search cannot be justified by the mobility of the car." 456 U.S. at 830, 102 S.Ct. at 2175. The facts in this case do not show exigent circumstances such that a telephonic warrant could not have been obtained. *See United States v. Thompson,* 700 F.2d 944, 948 (5th Cir.1983). Unless *Ross* is viewed as creating a legal fiction of exigency in all automobile highway stops such that even a telephonic warrant need not be sought, the search conducted here cannot be justified. However, the officers conducting the search did not rely on the *Ross* automobile exception to search the sailboat. Thus, given that there is an alternative basis for affirmance, *i.e.,* the border search exception, this Court need not reach the issue of whether exigent circumstances existed so as not to require the securing of a telephonic warrant prior to the search of the sailboat.

### (2) *Border Search Exception*

■ "[T]he warrantless search at the international border ... is justified on the basis of the sovereign's historical right to protect itself by examining people and property entering the country .... Not only may government officials search prop-

erty at the border without a warrant, but they need not have any suspicion to justify their search." *United States v. Niver*, 689 F.2d at 525. However, "[t]he courts have recognized a number of different types of situations which are often referred to as 'border searches,' but which require different levels of suspicion to justify the actual search." *Id.* A search which is the "functional equivalent" of a border search requires no suspicion, but an "extended border search" requires at least a reasonable suspicion of criminal activity to justify it. *Id.* at 525–26.

> [W]hatever type of search is involved, a border crossing must be demonstrated by more than reasonable suspicion or probable cause. We have generally required a showing beyond a "reasonable certainty" that the entity searched has crossed the international border, ... or "a high degree of probability that a border crossing took place." ... The standard of "reasonable certainty" has been described ... as something more than probable cause, but less than beyond a reasonable doubt.

*Id.* at 526. (citations omitted).

■ Barbin contends that the government failed to prove that a border crossing had occurred. The facts in this regard are summarized as follows: the vehicle and sailboat were reported by an informant to be approaching the border on the Mexican side at the mouth of the Rio Grande River and a crossing was to be made at this point; they were later sighted within 25 miles of the border on the United States side; the trailer and boat had sand and river mud on them; tire and trailer tracks were found at the border river crossing matching the vehicle and trailer. From this circumstantial evidence, the district court was justified in concluding that the border had been crossed by the sailboat and trailer.

In addition to showing that a border crossing has occurred, necessary for any border search, to justify a warrantless "extended border" search,

> [t]he government must also be able to show, with reasonable certainty, that conditions remained unchanged from the time of the border crossing until the subsequent warrantless search .... In other words, it must be established with reasonable certainty that, when searched, the person or thing was in the same condition as when the border was crossed. This requirement is usually met by proving either that the object searched was subject to constant surveillance from the time it crossed the border or that, under the circumstances, the contraband was not likely to have been introduced during any breaks in the surveillance.

*United States v. Richards*, 638 F.2d 765, 772 (5th Cir.), *cert. denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981) (citing a case in which a break in surveillance was deemed to be too short to have enabled the loading of the marijuana in view of how long it took to unload). Given the amount of marijuana found in this case—435 pounds—and the thoroughness with which it was concealed from view, if in fact the vehicle, trailer, and sailboat had just crossed the border about 25 miles away driving at a normal speed, there would not have been enough time to load it while the vehicle and its tow were not under observation on the United States side. However, there is no evidence as to when the border crossing actually took place. No one testified who saw it. It could have been several hours earlier, allowing sufficient time to load the marijuana on the United States side of the border; however, the finding of mud points to a recent crossing. The officers reported some repairs and repainting of the hull; however, that was assumed to have occurred after the loading and may not have been sufficiently fresh to have been done during the night or in the early morning hours. Under all of the circumstances, including the timing of the two informant's tips, it is reasonable to conclude that the marijuana was not likely to have been loaded on the United States side but was in the hull of the boat at the time of the border crossing.

The final requirement for a valid warrantless extended border search is that "the government agents must possess a reasonable suspicion, supported by articulable facts, that the person or thing searched is involved in illegal activity, such as smuggling contraband." *United States v. Richards*, 638 F.2d at 772. This requirement has already been discussed, *supra*, in terms of probable cause established by the informant's specificity and past reliability. Further suspicion of illegal activity was supported by the presence of some sand, mud and the relatively recent repainting of part of the sailboat noticed at the stop on the highway. Thus, since the facts of the present case meet all three of the requirements for a warrantless extended border search, the district court may be affirmed on that basis.

AFFIRMED.