**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**George L. MAYER and William O.**
**Ransom, Defendants-Appellants.**

**Nos. 86–1701, 86–1702.**

United States Court of Appeals,
Tenth Circuit.

May 12, 1987.
Rehearing Denied July 13, 1987.

**726**

G. Fred Metos of Yengich, Rich, Xaiz & Metos, Salt Lake City, Utah, for defendant-appellant George L. Mayer.

Kenneth R. Brown, Salt Lake City, Utah, for defendant-appellant William O. Ransom.

Bruce C. Lubeck, Asst. U.S. Atty. (Brent D. Ward, U.S. Atty., with him on the briefs), Salt Lake City, Utah, for plaintiff-appellee.

Before MOORE, SETH and TACHA, Circuit Judges.

SETH, Circuit Judge.

Co-defendants George L. Mayer and William O. Ransom were convicted of possession of a controlled substance with intent to distribute and conspiracy in violation of 21 U.S.C. §§ 841(a)(1) and 846 in the United States District Court for the District of Utah. Both defendants appeal their convictions.

They contend that the trial court should have granted their motions to suppress evidence seized during a warrantless search of an airplane and hangar in Milford, Utah because the search did not fall under the border search exception to the Fourth Amendment's warrant requirement as urged by the government. In addition, Mr. Ransom argues that there was insufficient evidence to support his conviction for possession of a controlled substance with intent to distribute. We reverse the district court's denial of the appellants' motions to suppress.

The facts relevant to this appeal are as follows. A radar operator stationed at Davis Monthan Air Force Base outside of Tucson, Arizona spotted an unidentified aircraft about 58 miles north of the United States-Mexico border. The radar equipment had the capacity to see into Mexico under certain conditions. The airplane was flying from a generally unpopulated area through a military operations zone at a low altitude. There were however several small airfields located between the border and the location where the plane was first detected.

The radar operator contacted the United States Customs Service and two Customs airplanes began to pursue the unidentified airplane. One of these planes first sighted the targeted plane at Prescott, Arizona. This Customs plane followed the targeted aircraft until it reached the Milford, Utah area. During their pursuit of the unidentified airplane, Customs agents observed that its lights went out twice.

Meanwhile, a deputy sheriff from Beaver County, Utah on a routine inspection of the Milford airport had noticed defendant William Ransom sitting in a truck by the hangar area. Mr. Ransom identified himself and informed the deputy that he was waiting for defendant George Mayer to fly in.

Customs agents in one of the Customs aircraft continued their surveillance of the unidentified airplane as it circled the Milford airport. While it circled, the air-

plane's landing and navigational lights were turned off. The airplane landed and entered a hangar at the airport.

Shortly thereafter, Customs agents contacted the Beaver County Sheriff's office and asked for help in detaining anyone at the airport. Another sheriff's deputy arrived at the airport and noticed defendant Ransom standing in front of a hangar. He also heard a metallic click and saw Mr. Ransom holding a hand-held radio to his face. The deputy then took Mr. Ransom into custody. One of the Customs planes had landed almost immediately after the targeted plane did. Customs agents and Beaver County law enforcement officers went to the hangar and found that the hangar was locked from the outside with a padlock. The Customs agents and the local officers attempted to obtain a telephonic search warrant to search the hangar. Some sort of authorization was obtained, but the government acknowledges that it was not valid to support a search. The officers proceeded to search the hangar and plane, on the basis of the authority they received, having secured a key to the padlock they had seized from defendant Ransom.

The search yielded approximately 650 pounds of marijuana, an extra fuel tank, fuel pumps, night vision goggles, aerial nautical maps and notes indicating flight coordinates over Mexico. A radio like the one Mr. Ransom had been using was also found. George Mayer and another man were apprehended inside of the hangar during the search and were arrested.

Prior to their trial, George Mayer and William Ransom moved to suppress the fruits of the search of the hangar and plane. The district court, 620 F.Supp. 249, denied their motions holding that although the telephonic search warrant was invalid the search was justified as one at the functional equivalent of the border. The jury convicted both defendants of conspiracy and possession of a controlled substance with intent to distribute.

As mentioned, even though the search of the airplane and hangar was apparently conducted pursuant to telephonic authoriza-tion, the government concedes that the "warrant" was defective. Accordingly, the evidence seized during the search must be suppressed unless the search falls within one of the exceptions to the Fourth Amendment's warrant requirement. The only exception at issue here is the border search.

The border search has long been recognized as an exception to the Fourth Amendment's warrant requirement. *Carroll v. United States*, 267 U.S. 132, 154, 45 S.Ct. 280, 285, 69 L.Ed. 543. At the border, "the Fourth Amendment balance between the interests of the Government and the privacy right of the individual is struck more favorably to the Government," *United States v. Montoya de Hernandez*, 473 U.S. 531, 540, 105 S.Ct. 3304, 3310, 87 L.Ed.2d 381, because of the "longstanding right of the sovereign to protect itself by stopping and examining persons and property," *United States v. Ramsey*, 431 U.S. 606, 616, 97 S.Ct. 1972, 1978, 52 L.Ed.2d 617, and the "longstanding concern for the protection of the integrity of the border." *Montoya de Hernandez*, 473 U.S. at 538, 105 S.Ct. at 3309. Border searches are reasonable within the meaning of the Fourth Amendment because of "the single fact that the person or item in question had entered into our country from outside." *Ramsey*, 431 U.S. at 619, 97 S.Ct. at 1980.

A "border search" need not take place at the actual border but may be conducted at its functional equivalent. *Almeida-Sanchez v. United States*, 413 U.S. 266, 272–273, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596. A search at the functional equivalent of the border takes place "after a border crossing at the first practicable detention point." *United States v. Garcia*, 672 F.2d 1349, 1365 (11th Cir.1982). The United States Supreme Court has observed that searches at an established station near the border at the intersection of two or more roads leading from the border or searches of the passengers and cargo of an airplane that arrived at a St. Louis airport after a nonstop flight from Mexico City would be examples of searches at the functional equivalent of the border. *Almeida-Sanchez*, 413 U.S. at 272–273, 93 S.Ct. at 2539.

Searches at the functional equivalent of the border fall within the border search exception "because their sole justification is the fact that the border has been crossed." *Garcia,* 672 F.2d at 1365.

This circuit has not determined when a search conducted away from the actual border constitutes a permissible border search. The Eleventh Circuit in *United States v. Carter,* 760 F.2d 1568, 1576 (11th Cir.), has concluded that a search at the border's functional equivalent is proper if:

"(1) there is a reasonable certainty that the object of the search has just crossed the border, (2) the search takes place at the first practicable point after the border was crossed, and (3) there has been no time or opportunity for the object of the search to have changed materially since the time of the crossing."

Other circuits have taken a similar approach. *See, e.g., United States v. Amuny,* 767 F.2d 1113, 1123 (5th Cir.), *reh'g denied,* 775 F.2d 301 (5th Cir.); *Alexander v. United States,* 362 F.2d 379, 382 (9th Cir.), *cert. denied,* 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439.

Since the sole justification for searches at the functional equivalent of the border is that the border itself has been crossed, *Garcia,* 672 F.2d at 1365, the "reasonable certainty" inquiry is critical. The reasonable certainty standard requires "something more than a showing of probable cause but something less than proof beyond a reasonable doubt." *United States v. Amuny,* 767 F.2d 1113, 1123 (5th Cir.). Thus reasonable certainty is a high standard. 767 F.2d at 1123. A "reasonable certainty" is a "firm belief," *United States v. Tilton,* 534 F.2d 1363, 1367 (9th Cir.), or a "firm conviction," *United States v. Corral-Villavicencio,* 753 F.2d 785, 789 (9th Cir.). Because the reasonable certainty standard strikes an appropriate balance between the government's interest in the protection of the integrity of its borders and the individual's right to be free of unreasonable searches and seizures, it is the appropriate standard to apply to the basic element of the functional equivalent determination to support a "border search."

Courts have found that the reasonable certainty standard was satisfied where government agents monitored or had direct or circumstantial evidence of a border crossing. In *United States v. Stone,* 659 F.2d 569 (5th Cir.), Customs Service personnel first sighted an airplane over foreign airspace and surveyed it continuously as it entered the United States' airspace and landed at a United States airport. The *Stone* court upheld the warrantless search of the plane which followed its landing as a valid border search since it was undisputed that the airplane had crossed the border. 659 F.2d at 572–573. In *United States v. Haley,* 743 F.2d 862 (11th Cir.), *reh'g denied,* 748 F.2d 690 (11th Cir.), Customs agents continuously tracked the defendant's airplane as it departed from Florida, left the United States' territorial limits and returned across the border to land in Georgia. The court held that the warrantless search of the plane upon its landing occurred at the functional equivalent of the border and therefore fell within the border search exception. 743 F.2d at 865, 867. The court based its conclusion on the fact that the airplane actually crossed the border and on the airplane's path of travel from an area known for illegal drug trafficking. 743 F.2d at 867.

Courts have held that the reasonable certainty standard was satisfied where, even if the government had not monitored an actual border crossing, it had independent, albeit circumstantial evidence of a border crossing. Thus, in *United States v. Adams,* 569 F.2d 924, 925 (5th Cir.), *cert. denied,* 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426, the court held that although Customs officers did not observe a truck cross the border, they met the reasonable certainty standard as they could infer from fresh mud on the tires and fenders of the truck and from the lack of recent rainfall that a crossing of the Rio Grande had occurred. Similarly, in *United States v. Barbin,* 743 F.2d 256, 261 (5th Cir.), the court found that the government had proved that Customs officers were reasonably certain a border crossing had occurred where an informant had reported that a jeep driven by a man described as matching

defendant's appearance was towing a trailer and sailboat on the Mexican side of the border near the Rio Grande, where the jeep, trailer and sailboat were sighted 25 miles of the border on the United States side, where the trailer and boat had river mud on them and where tire and trailer trucks matching the jeep and trailer were found at the border river crossing.

Courts have declined to find that the reasonable certainty standard has been satisfied where there was no monitoring of a border crossing and where there was no independent evidence that a border crossing had occurred. In *United States v. Brennan*, 538 F.2d 711, 715–716 (5th Cir.), *reh'g denied*, 542 F.2d 575 (5th Cir.), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538, the Fifth Circuit held that where a plane took off and returned to an airport in the United States, where the defendant pilot filed no flight plan and where the defendant's known direction of travel was to a city in the United States, there was no reliable indication that the defendant's flight was international and the Customs search of the plane upon its landing was not a search at the functional equivalent of the border.

In *United States v. Amuny*, 767 F.2d 1113 (5th Cir.), one of the defendants was observed acting furtively around a Galveston, Texas airport and was tracked on two flights from Galveston, Texas to Palacios, Texas, a town on the coast of the Gulf of Mexico. Prior to the second flight, agents saw the defendants loading food and a cooler into the airplane which was refueled prior to takeoff. The airplane did not return until the next day. The court noted that these facts "are no more indicative of drug traffickers flying to Central or South America to pick up contraband than of persons taking a one day outing in the United States." 767 F.2d at 1124. The court held that the government failed to meet the reasonable certainty test by adducing facts that indicated that the defendants had an opportunity to cross the border because "[p]roof that a vehicle had a mere opportunity to cross the border is not adequate." 767 F.2d at 1124.

In the instant case, Customs agents neither observed a border crossing nor had any evidence that a crossing had occurred. The airplane was first spotted 58 miles north of the United States-Mexico border. The trial court inferred the fact that the "curvature of the earth" obscured the plane from detection by radar until this point was reached. We find no evidence in the record to support this inference. There were a number of airfields between the border and the location where the airplane was first detected. It was possible that the airplane had begun its flight south of the border. But it was equally possible that its flight had begun north of the border. The airplane's mere proximity to the border simply could not have supported a reasonable certainty that the border had been crossed.

Moreover, Customs agents had no independent reason to believe that the airplane originated south of the border. The plane's low altitude, its lack of a transponder, its travel from an unpopulated area through a military zone and its lack of lights during the landing process, whether viewed separately from or in conjunction with the plane's proximity to the border, are insufficient facts to give rise to a reasonable certainty that anything had been smuggled across the border. This is not a case like *United States v. Adams*, 569 F.2d 924 (5th Cir.), or *United States v. Barbin*, 743 F.2d 256 (5th Cir.), where there were independent, articulable facts from which the requisite firm belief that a vehicle had crossed the border could be inferred. Accordingly, the reasonable certainty standard was not met in this case and the search of the airplane and hangar must fail as a search at the functional equivalent of the border. Thus, the evidence seized during the search should not have been admitted at trial.

In view of our disposition of this appeal we do not consider the contentions of Mr. Ransom as to the sufficiency of the evidence to support a possession charge.

The trial court's denial of the appellants' motions to suppress is REVERSED. The

judgments are set aside and the cases are REMANDED. IT IS SO ORDERED.