951 F.2d 1261
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Luis SANCHEZ-LUNA, Defendant-Appellant.
 No. 90-2064.
 United States Court of Appeals, Tenth Circuit.
 Dec. 20, 1991.
 
 Before LOGAN, JOHN P. MOORE and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Defendant Luis Sanchez-Luna appeals denial of his motion to suppress evidence. The issue is whether there was sufficient evidence to find with reasonable certainty that the search of the pickup truck Defendant was driving, revealing marijuana hidden in the roof of the truck's camper shell, was the functional equivalent of a border search. The district court held that it was, and we affirm.[1]
 
 
 2
 Defendant Luis Sanchez-Luna pled guilty to charges of violation of 21 U.S.C. § 952(a)(1), importation of marijuana, and 21 U.S.C. § 841(a)(1), possession of marijuana with intent to distribute. He entered his plea conditionally, reserving appeal of the district court's denial of his motion to suppress evidence, based on his claim that the marijuana in question was discovered during a warrantless search of the vehicle he was driving. The government concedes that the search was without warrant, but contends that the search fell within an exception to the warrant requirement as a search conducted at the functional equivalent of the border between the United States and the Republic of Mexico.
 
 
 3
 The parties do not dispute the facts, as set forth in the Order denying Defendant's motion to suppress. R.Vol. I tab 16 at 1-8; see also R.Vol. III (Transcript of hearing on motion to suppress). At approximately 7:00 p.m. on September 19, 1989, a border patrol agent received an alert from a sensor on the border between New Mexico and the Republic of Mexico about seventeen miles west of Columbus, New Mexico. The agent was seven to eight miles from the point of entry, an unmanned gate in the border fence. He drove directly to the point of entry and noticed two sets of fresh tire tracks entering through the gate. A field worker flagged the agent down. The field worker described the two vehicles and told the agent that the trucks had driven north approximately one mile to Highway 9 and then had turned west on that highway toward Hachita, New Mexico. The agent followed that route, noticing a cloud of dust from a vehicle preceding him down the highway, which was unpaved for ten to fifteen miles in this stretch.
 
 
 4
 At Hachita, a very small rural community, the east-west Highway 9 bisects Highway 146 (previously denominated Highway 81, R.Vol. III at 7), a north-south highway which enters the Republic of Mexico south of Hachita at Antelope Wells and connects with Interstate Highway 10 north of Hachita. The agent was approaching Hachita from the east. By radio contact with another agent, he determined that no vehicles were on Highway 9 west of Hachita. A subsequent check of vehicles crossing the border at Antelope Wells revealed that the two vehicles in question had not passed through that Port of Entry during this time period. R.Vol. III at 33-34. No other vehicles were observed on the highways in question during the time period. No roads other than Highways 9 and 146 lead into Hachita.
 
 
 5
 The agent turned north on Highway 146 at Hachita and, at the first rise in the highway just north of Hachita, he observed the tail lights of two vehicles ahead. The agent caught up with the vehicles, which matched the description of the two vehicles the field worker observed driving north from the gate in the border fence to Highway 9. The agent stopped the vehicles and was joined by other border patrol agents. At the time and place of the stop, Defendant was about forty-seven miles from the border,[2] and it was between fifty minutes and an hour after the sensors had alerted to the border crossing.
 
 
 6
 The agent determined that the roof to the camper shell of the pickup truck Defendant was driving was unusually stiff, and the truck smelled strongly of deodorizer. Defendant was arrested and was taken to the border patrol station at Deming, New Mexico, where a trained dog alerted to the camper shell. Marijuana was discovered hidden in the shell.
 
 
 7
 It is well-established that border searches need not be under valid warrant. See, e.g., United States v. Mayer, 818 F.2d 725 (10th Cir.1987):
 
 
 8
 The border search has long been recognized as an exception to the Fourth Amendment's warrant requirement. At the border, "the Fourth Amendment balance between the interests of the Government and the privacy right of the individual is struck more favorably to the Government," because of the "longstanding right of the sovereign to protect itself by stopping and examining persons and property," and the "longstanding concern for the protection of the integrity of the border." ...
 
 
 9
 A "border search" need not take place at the actual border but may be conducted at its functional equivalent. A search at the functional equivalent of the border takes place "after a border crossing at the first practicable detention point." ... Searches at the functional equivalent of the border fall within the border search exception "because their sole justification is the fact that the border has been crossed."
 
 
 10
 Id. at 727-28 (citations omitted); see also Almeida-Sanchez v. United States, 413 U.S. 266, 272-73 (1973).
 
 
 11
 This circuit has set forth a three-pronged test to determine whether a stop can be defined as a permissible warrantless search at the functional equivalent of the border. (1) There must be a reasonable certainty that the object of the search has just crossed the border; (2) the search must take place at the first practicable point after the border was crossed; and (3) there must have been no opportunity for the object of the search to have been materially changed between the time of the border crossing and the time of the stop. Mayer, 818 F.2d at 728.
 
 
 12
 "Reasonable certainty" that the object of the search has indeed just crossed the international border requires more than a showing of probable cause but need not achieve the level of proof beyond a reasonable doubt. Id. It is a "firm conviction" or "firm belief." Id. (citations omitted). It has been found to be satisfied "where government agents monitored or had direct or circumstantial evidence of a border crossing," especially when there was independent evidence that a border crossing had occurred. Id. (citations omitted).
 
 
 13
 Applying the first element of the Mayer test, we hold that the district court did not err in finding that there was a "reasonable certainty" that the vehicle Defendant was driving had just crossed the border. The border crossing was evidenced by the alert of the border sensor, by the fresh tire tracks at the gate in the border fence, and by the independent corroboration of the field worker who described the vehicles and the route the vehicles took. There were only two alternative roads over which Defendant could have driven to arrive at the point northbound on Highway 146 north of Hachita at which he was sighted and stopped by the agent, and other agents confirmed that the vehicle Defendant was driving had not been on either of those two roads at that time. Although the vehicle Defendant was driving was not in sight on Highway 9, the agent was following closely enough to see the plume of dust created by the vehicles described by the field worker as headed west on Highway 9.
 
 
 14
 Second, the stop occurred at the first practicable point of detention after the sensor indicated a crossing into the United States. The agent did not intercept Defendant by chance while on roving patrol. The agent was in deliberate pursuit of the vehicles beginning at the time the sensor alerted him to the border crossing. He proceeded to the point of entry, sighted fresh tracks in the dirt, got vehicle descriptions from an independent witness, followed the directions of the eyewitness (and the vehicles' dust plumes on the unpaved portion of Highway 9), ascertained that the vehicles had not continued west out of Hachita on Highway 9, continued pursuit north of Hachita on Highway 146, sighted the tail lights of the vehicles just north of Hachita, and followed those tail lights until the vehicles were stopped.
 
 
 15
 And third, the time which elapsed between the sensor alert of the border crossing and the agent's stop of Defendant was consistent with the travel time directly from the border to the stop. Thus all three elements of the Mayer test were satisfied.
 
 
 16
 The order of the District Court for the District of New Mexico denying Defendant's motion to suppress is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 At one point during the hearing, the agent testified that the stop occurred fifteen to twenty miles from the border. However, he clarified that that was the distance in a straight line from the border to the point at which Defendant was stopped. R.Vol. III at 13. Other testimony established that the stop occurred approximately forty-seven road miles from the border gate at which the sensor alert had occurred. Id. at 24, 27