**UNITED STATES of America**

v.

**Fernando LASSO–BARRIOS.**

**No. EP–96–CR–724–H.**

United States District Court,
W.D. Texas.

Feb. 20, 1997.

Mark M. Greenberg, Assistant U.S. Attorney, El Paso, TX, for the United States.

William Maynard, Assistant Federal Public Defender, El Paso, TX, for Defendant Lasso–Barrios.

## ORDER REGARDING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

HARRY LEE HUDSPETH, Chief Judge.

Defendant Fernando Lasso–Barrios is charged with possessing a quantity of marihuana with intent to distribute it. He has filed a motion to suppress evidence, complaining of the search of a van by special agents of the Customs Service on October 1, 1996. The Court, having considered the evidence and the arguments of counsel, finds that the motion to suppress evidence should be denied.

Sophisticated drug smugglers frequently use a "relay system" to deliver drugs to their destination. Under the typical scenario, one driver or "mule" crosses the load vehicle with its well-concealed cache of drugs into the United States from Mexico through one of the ports-of-entry. If the importation is accomplished successfully and uneventfully, the driver proceeds to a public place, such as a restaurant, store, or shopping center parking lot, where he parks the vehicle and walks away. A second driver then arrives, gets in the vehicle, and drives it to another location. At this point, the drugs may be stored at a location in El Paso County, or may proceed on to their ultimate destination, which may be as far away as Los Angeles, Chicago, or New York City. Through extensive experience with drug smuggling operations, and through extensive intelligence gathering, Customs agents in the El Paso area have become familiar with many of the customs and practices in the drug trade. Accordingly, these agents periodically stake out one of the popular relay stations along the drug pipeline to see if they can spot a drug operation in progress. This explains why on the afternoon of October 1, 1996, two special agents of the Customs Service were conducting random surveillance in the parking lot of the Fox Plaza Shopping Center at Alameda Avenue and Paisano Drive in El Paso, Texas. At approximately 3:45 p.m., Special Agent Todd Johnson saw some activity that caught his eye. Two Hispanic males were standing at the pay telephone outside Pistol Pete's Pizza. They did not appear to be going in to any of the stores or shopping, but rather were pacing up and down and watching the parking lot. They also took turns making telephone calls on the pay phone. At 3:55 p.m., a pickup truck pulled up beside the two men and a conversation ensued between them and the occupant of the pickup. The truck then drove away, and the two Hispanic males resumed making telephone calls. At 4:10 p.m., the same pickup truck returned to the parking lot, stopped beside the pay telephone and another conversation ensued. One of the two Hispanic males, later identified as Defendant Fernando Lasso–Barrios, walked over to a gray van parked in the parking lot. He opened the door of the van and looked inside. The pickup truck then drove around in front of the van and Lasso had another brief conversation with the occupant. The pickup truck then sped out of the parking lot and was not seen again. Lasso returned on foot to his previous location in front of the pay telephone.

Special Agent Johnson's suspicions had been aroused. He decided to obtain the license plate number of the gray van to call it in to his dispatcher. He learned that the van had entered the United States from Mexico at the Paso del Norte port-of-entry at 1:04 p.m. that day.

As surveillance continued, the two men got in the van and left the parking lot with Defendant Lasso driving. They travelled only one block to a restaurant where Lasso parked the van in the parking lot. The two men went inside and sat at a table. Twenty minutes later, they emerged from the restaurant, but did not return to the parked van. Instead, they walked back to Fox Plaza and went directly to another pay telephone located outside the J.C. Penney department store. They appeared to make more telephone calls. A short time later, they walked to another

pay telephone located outside the Fox Vision store.

At about this time, a blue van arrived in the parking lot driven by an individual later identified as Luis Rojas. Rojas stopped his van near the two men, got out, and the three had a conversation. More telephone calls were made from the pay phone.[1]

A little after 5:30 p.m., all three men got in the blue van and drove one block to the restaurant parking lot where the gray van was located. Defendant Lasso got in the gray van and followed the blue van up Paisano Drive. Needless to say, the agents followed. The two vans drove in tandem to an apartment complex near Bassett Center. At approximately 5:55 p.m., both vans parked in the parking lot of the apartment complex and all three men got out. Rojas walked to the door of an apartment and knocked while Lasso and the third man stood around on the sidewalk. The surveilling agents decided that it was time to approach the three men and ask some questions before they went inside an apartment.

Agent Johnson approached the Defendant Lasso, identified himself as a special agent of the Customs Service, and inquired about the van Lasso was driving. Defendant Lasso stated that he had borrowed the van from a friend and had driven it to the apartment complex following the van driven by Rojas. When asked what he was doing at the apartment complex, Lasso could not or would not answer. Agent Johnson asked for a consent to search the van, and Lasso gave it. Inside the van, the Customs agents noticed the odor of air freshener and saw a roll of Saran Wrap, industrial size. They could not see or smell any marihuana inside the van. They tapped the sides of the van and detected an odd sound. Suspecting the presence of a hidden compartment, they called for a drug sniffing dog. The dog handler arrived with his dog at approximately 6:15 p.m., and the dog immediately alerted to the outside wall of the gray van on the driver's side. The agents then arrested Lasso and administered

his *Miranda* warnings. The gray van was taken to the Paso del Norte port-of-entry where it was searched. The search revealed the presence of hidden compartments containing more than 100 pounds of marihuana.

■ This case presents the threshold question as to whether Defendant Lasso has standing to challenge the search of the gray van. The proponent of a motion to suppress evidence has the burden of establishing that his personal Fourth Amendment rights were violated by the search or seizure which he seeks to challenge. *Rakas v. Illinois,* 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978); *United States v. Parks,* 684 F.2d 1078, 1083 (5th Cir.1982). The moving defendant must show that he had a legitimate and reasonable expectation of privacy in the premises which were searched. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* supra. In the instant case, the true ownership of the gray van is unknown. Because it bore Chihuahua, Mexico license plates, the investigating agents were unable to determine its ownership. At the hearing on the motion to suppress evidence, Lasso testified that he believed the van was owned by one Jose Ornelas, an acquaintance from Mexico. According to Lasso, he had met Ornelas recently, and had seen him with the van in Juarez, Mexico approximately ten days before his arrest. On October 1, 1996, Lasso testified that he had agreed to meet Ornelas at a Western Union office on Paisano Drive in downtown El Paso. However, Ornelas did not appear. Instead, an unidentified woman showed up driving the gray van. She turned over the van and the keys to Lasso, advising him that Ornelas would rendezvous with him later at a Chinese restaurant. According to Lasso, he jumped in the van and drove it to the parking lot of the Fox Plaza Shopping Center, where it was first observed by the agents on surveillance.

At the outset, the Court notes that Lasso's explanation as to how he came to possess the van is not credible. The suggestion that the

---

1. As a sidelight not relevant to the issues in the case, it appears that Rojas locked his keys inside the blue van. One or more of the phone calls from the pay phone, therefore, were made for the

purpose of seeking a locksmith to come to the scene and open the van. The locksmith arrived at approximately 5:30 p.m. and succeeded in unlocking the blue van.

owner of a van loaded to the gills with valuable marihuana would turn it over to an unwitting casual acquaintance for no reason other than to allow the acquaintance to tool around El Paso for the afternoon is so absurd as to provoke not only disbelief but raucous laughter on the part of any trier of fact, be it judge or jury. On the other hand, Lasso's story, as silly as it may be, is not specifically contradicted by other evidence. The government found itself unable to prove or disprove the existence of "Jose Ornelas" or whether he was the legal owner of the van. Compare *United States v. Ponce,* 8 F.3d 989, 994 (5th Cir.1993) (police license plate check verified that defendant's brother-in-law was the legal owner of the vehicle). The Defendant cites several cases for the proposition that a person borrowing a vehicle from the legal owner has standing to challenge its search. *United States v. Kye Soo Lee,* 898 F.2d 1034, 1038 (5th Cir.1990); *United States v. Martinez,* 808 F.2d 1050, 1056 (5th Cir.1987), *cert. denied* 481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987); *United States v. Rose,* 731 F.2d 1337, 1343 (8th Cir.1984), *cert. denied* 469 U.S. 931, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984). Since Lasso's testimony in this case gives him at least arguable standing, the Court will proceed to consider the merits of the matter.

 In this case, the Customs agents did not effect a stop of the gray van. The van was parked and Lasso was standing on the sidewalk a short distance away at the time the agents first approached him. The initial contact between Special Agent Johnson and Defendant Lasso, therefore, was merely the sort of consensual encounter that does not implicate Fourth Amendment rights at all. *Florida v. Rodriguez,* 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). After a very brief conversation with Lasso, during which he was neither detained nor arrested, he consented to let the agents look inside the van. The Court finds from a preponderance of the evidence that the Defendant's consent to search was voluntary. *United States v. Hurtado,* 905 F.2d 74 (5th Cir.1990) (en banc). The consensual inspection of the van by Cus-

toms agents revealed no marihuana in sight and no detectable odor of marihuana. However, the consent search did result in two significant findings. First, the agents detected a strong odor of air freshener. It is well known that air freshener is commonly used to mask the odor of marihuana. Second, the agents observed a large roll of Saran Wrap in plain view. Saran Wrap is commonly used to wrap marihuana. Furthermore, in addition to inspecting the interior of the van, Special Agent Johnson tapped the sides of the vehicle. The tapping produced a dull thud rather than the normal hollow sound. This suggested the existence of a secret compartment containing some solid object or objects. These findings, taken together, gave rise to a reasonable suspicion that the van contained contraband subject to seizure. The agents were authorized to detain both the vehicle and its occupants for a brief period of time for the purpose of bringing a drug detecting dog to the scene. A dog was summoned, and arrived at approximately 6:15 p.m. The dog alerted almost immediately to the driver's side outside wall of the gray van. At that point, probable cause existed for the arrest of the Defendant and for an intensive search of the gray van. *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). The brief detention of the Defendant and his vehicle preceding the dog sniff, lasting no more than twenty-five minutes, was reasonable under all the circumstances. The search revealed 124 pounds of marihuana concealed in the side panels of the van, giving rise to the indictment in this case. The search of the van was supported by probable cause, and the Defendant's motion to suppress evidence should be denied.

 In the alternative, the search of the van by Customs agents in this case probably qualifies as an "extended border search". While customs searches may be made at the border itself without any probable cause or even suspicion, an "extended border search" must be supported by reasonable suspicion of criminal activity. *United States v. Delgado,* 810 F.2d 480, 483 (5th Cir.1987); *United States v. Barbin,* 743 F.2d 256, 261 (5th Cir.1984); *United States v. Richards,* 638 F.2d 765, 772 (5th Cir.1981). The threshold question is whether a border crossing has in

fact occurred. *United States v. Delgado, supra.* It is not necessary that a Customs inspector actually observe the border crossing taking place; the crossing may be established by other evidence. *United States v. Delgado,* supra at 484 n. 2; *United States v. Johnson,* 588 F.2d 147, 154 (5th Cir.1979). In the instant case, it is undisputed that a border crossing did take place. Computer records established that the load vehicle had entered the United States from Mexico at a port-of-entry at 1:04 p.m. on October 1, 1996. The van was first observed by agents on surveillance at the parking lot of the Fox Plaza Shopping Center at 3:45 p.m. the same day. It was kept under constant surveillance thereafter until it was searched. Both the location at which the van was first observed (Fox Plaza) and the location at which it was seized (an apartment complex on Edgemere) are located within three miles of the international boundary between the United States and Mexico. In other words, the load vehicle had not progressed very far into the United States at the time it was spotted by Customs agents. Under all the circumstances, the Court finds that the search of the van was justified as an extended border search.

It is therefore ORDERED that the Defendant's motion to suppress evidence in the above-styled and numbered cause be, and it is hereby, DENIED.