**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roberto MACIAS and Raul Macias,
Defendants-Appellants.**

No. 76–2092.

United States Court of Appeals,
Fifth Circuit.

Jan. 26, 1977.

Joseph (Sib) Abraham, Jr., El Paso, Tex., for Roberto Macias.

Charles Louis Roberts, Harry Tom Petersen, El Paso, Tex., for Raul Macias.

John E. Clark, U. S. Atty., San Antonio, Tex., William B. Hardie, Jr., Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before COLEMAN, AINSWORTH and INGRAHAM, Circuit Judges.

COLEMAN, Circuit Judge:

Alleging constitutionally invalid stops and searches, Raul and Roberto Macias seek a reversal of their convictions for intentionally possessing, with intent to distribute, approximately 1,200 pounds of marijuana. 21 U.S.C. § 841(a)(1). We affirm.

The events which led eventually to this appeal occurred in the early morning hours of January 15, 1975. United States Border Patrol Officers Norris and LeCroy were on traffic check duty at checkpoint # 1171, located roughly 20 miles east of El Paso, Texas, on Highway 62–180. This checkpoint is not visible to a vehicle approaching from the west until the vehicle emerges from a winding uphill canyon road and crests a hill about 400 yards west of the checkpoint.

On the morning in question at approximately 4:15 a. m., Officer Norris noticed two vehicles approach the checkpoint from the west and execute a U-turn in the middle of the highway at a point approximately 300–350 yards from the checkpoint. Observing this "turn-around", Officers Norris and LeCroy got in their car and gave chase. Both pursued vehicles pulled into a closed service station located about a quarter of a mile west of the checkpoint. One of the vehicles stopped but the other returned to the highway, headed back towards El Paso.

Upon reaching the service station, the officers found a white and brown International Travel-All, Raul Macias at the wheel, the door open and the hood up. The officers asked the driver his citizenship, and Macias replied that he was a United States citizen. They then asked him why he had turned around when approaching the checkpoint and he stated that he was having engine trouble. Having observed this vehicle leave the turn-around point at a high rate of speed, the officers doubted the statement and asked the driver what was in the truck. He replied, "Do you have a search warrant?" The officers stated that they did not need a search warrant.

Having noticed that the back of the vehicle appeared to be full and that the spare tire and other items were raised to the window level, Officer Norris opened the back door and discovered the marijuana.[1] Raul was arrested.

---

1. The exchange between the Assistant U. S. Attorney and Officer Norris which elicited these facts was as follows:

    Q. Did you notice anything irregular or extraordinary about the back part of that vehicle?

    A. Only that it contained—it was full of something.
    Q. And how did you denote that?
    A. Well, when you looked in the window you could see a suitcase, spare tire, whatever it was, below that, it was solid with something.

Following this, Officers Norris and Le-Croy proceeded down the road for a few minutes to see if the second vehicle involved in the "turn-around" had stopped nearby. Ascertaining that it had not, they called the dispatcher and told him that an arrest had been made but that another car had gotten away. They then called for assistance from any other unit in the area which could respond. This call was answered by Officers Haas and Perry of the Ysleta station. Norris told them to be on the lookout for a vehicle headed in that direction and instructed them to stop all vehicles that took the Ysleta cut-off.

Haas and Perry left their area and went to where they set up their temporary roadblock—two miles north of Interstate Highway 10 on the Zaragosa Road, Ysleta cut-off.

Although Haas and Perry received no description of the vehicle they were looking for, a second radio transmission informed them that the first vehicle apprehended was an International Travel-All.

Having established their "impromptu checkpoint", Haas and Perry noticed headlights approaching and waited for the vehicle to arrive. This car was a 1974 white Plymouth. It was stopped and the driver questioned.

In the meantime, a fifth Border Patrol agent had become involved in the operation. While returning to Border Patrol Headquarters, Officer Milner heard Norris' and LeCroy's initial call and heard the response of the Ysleta officers. Milner advised both units that he would proceed east on 62–180, thus blocking off the "other avenue of escape". Milner heard Norris' request for a "10–28" identification on the International Travel-All driven by Raul.

Shortly thereafter, Milner passed a second International Travel-All, made a U-turn, and followed it. He advised Perry and Haas that he was in pursuit. Milner testified that the reason he followed the truck was that he had encountered no other vehicles other than a large trailer truck, the Travel-All was the only vehicle on the highway, and that he felt it was unusual that this vehicle was another International Travel-All.

Shortly after Milner started following the truck, it came to a stop behind the white Plymouth that had been stopped by Haas and Perry. The time was approximately 4:25 a.m. Haas was still talking to the driver of the Plymouth as Perry approached the Travel-All. As he did so, he turned and shouted, "This is it. I can smell it." The Plymouth was released and Perry opened the rear of the Travel-All, finding the marijuana. Roberto Macias was arrested.

Before trial, the appellants filed motions alleging that the seizures of the marijuana were the results of searches unsupported by probable cause and as such were due to be suppressed. In denying these motions, the District Court determined that the involved checkpoint was the functional equivalent of the border and that probable cause did exist for the searches.

### The Status of Checkpoint # 1171

The District Court found that checkpoint # 1171 had the requisite characteristics to be deemed a "functional equivalent of the border". The appellants assert that this conclusion was erroneous and that, accordingly, the seizure of the marijuana was not supported by probable cause. This is so, they contend, because the "turnarounds" which provided probable cause for the chase were suspicious only in relation to the command to stop. Thus, if the stop was illegal, the subsequent search was tainted, citing *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Whether or

Q. So, in other words, the suitcase and spare tire were raised?
A. They were raised. They were window level.
Q. *All right. So, they were window level at the time that you attempted to view the interior of the vehicle; is that correct?*

A. Yes.
Q. Now, the second door of the vehicle was opened and the marijuana was found; is that correct?
A. Yes, sir.

not the checkpoint constitutes the functional equivalent of the border is a question we need not, and do not, decide.

Checkpoint # 1171 consists of a small, permanent building, stop signs, slow signs, reflector signs, flashing lights, traffic cones and flood lights, as well as permanent electrical service. Testimony elicited at trial showed that this checkpoint was manned and in operation an average of 14.2 hours each day during the calendar year from February 1, 1974, to January 31, 1975. During that period of time, the midnight to 8:00 a.m. shift was manned 208 times, the 8:00 a.m. to 4:00 p.m. shift was manned 192 times, and the 4:00 to midnight shift was manned 265 times. When this checkpoint is operational, all eastbound vehicles are stopped and the occupants questioned as to citizenship. This checkpoint is located approximately 20.6 miles east of El Paso, Texas on U. S. Highway 62–180, 27.8 miles from the Ysleta Port of Entry on the United States-Mexican Border, 23.4 miles from the Fabens Port of Entry on the United States-Mexican Border, and 61 miles from the Fort Hancock Port of Entry on the United States-Mexican Border.

■ This is clearly a permanent checkpoint. *See United States v. Martinez-Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 3080, 49 L.Ed.2d 1116 (1976); *United States v. Hart,* 5 Cir. 1976, 506 F.2d 887, 895, *vacated,* 422 U.S. 1053, 95 S.Ct. 2674, 45 L.Ed.2d 706, *aff'd after remand,* 525 F.2d 1199; *United States v. Cantu,* 5 Cir. 1974, 504 F.2d 387, 389. At permanent checkpoints, stops may "be made in the absence of any individualized suspicion . . .". *United States v. Martinez-Fuerte, supra,* 96 S.Ct. at 3084.

■ Although the stop did not physically occur right at the checkpoint, the defendants had already stopped themselves long enough to make a U-turn and clear out at high speed. One came to a dead stop at the service station. The question of a similar "stop" was recently addressed by this Court in *United States v. Garza,* 5 Cir. 1976, 544 F.2d 222 (1976), under like circumstances. In that case, the "stop" was approved as being "reasonably based on factors indicat-

ing illegal activity was afoot". Such considerations being present here, appellant's contention that the command to stop was illegal is without merit.

### The Search of the First Vehicle

The Supreme Court has decreed that searches of private vehicles "at traffic checkpoints removed from the border and its functional equivalents", must be based on probable cause. *United States v. Ortiz,* 422 U.S. 891, 896–97, 95 S.Ct. 2585, 2589, 45 L.Ed.2d 623 (1975).

■ As to Raul Macias' vehicle, the record shows that Officer Norris noticed the peculiar loading of the rear of the vehicle through the Travel-All's window. When questioned as to why he had turned around, Macias gave the dubious answer that he was having engine trouble. Although

"flight from a law enforcement officer cannot support alone a determination of probable cause, flight can provide in appropriate circumstances the key ingredient justifying the decision of a law enforcement officer to take action."

*United States v. Vasquez,* 5 Cir. 1976, 534 F.2d 1142, 1145.

The action of Raul Macias in avoiding the checkpoint by making a U-turn is at least analogous to our prior cases involving efforts to avoid checkpoints by running through them. In those cases, the actions of the defendants in running the checkpoints have been given obvious weight in determining the existence of probable cause for a subsequent search of the vehicle. *See United States v. Medina,* 5 Cir. 1976, 543 F.2d 553 (1976); *United States v. Dimas,* 5 Cir. 1976, 537 F.2d 1301.

■ Considering the attempted evasive action and the loaded character of the vehicle, which was open to plain view, probable cause existed for the search of Raul Macias' Travel-All.

### The Stop and Search of the Second Vehicle

■ Roberto Macias complains not only of the search of his vehicle but also of the

initial stop which led to it. This stop did not occur at the border or its functional equivalent. It did begin, however, at a permanent checkpoint, although the defendant delayed its accomplishment by running away. Under *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), a particular vehicle may be stopped when the observations of a roving patrol create a "reasonable suspicion" that illegal activity is occurring. *Id.* at 881, 95 S.Ct. 2574. The Court further explained that:

> The effect of our decision is to limit exercise of the authority granted by both § 287(a)(1) and § 287(a)(3). Except at the border and its functional equivalents, officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country.

> Any number of factors may be taken into account in deciding whether there is reasonable suspicion to stop a car in the border area. Officers may consider the characteristics of the area in which they encounter a vehicle. Its proximity to the border, the usual patterns of traffic on the particular road, and previous experience with alien traffic are all relevant. . . . They also may consider information about recent illegal border crossings in the area. The driver's behavior may be relevant, as erratic driving or obvious attempts to evade officers can support a reasonable suspicion. . . . The vehicle may appear to be heavily loaded, it may have an extraordinary number of passengers, or the officers may observe persons trying to hide. . . . In all situations the officer is entitled to assess the facts in light of his experience detecting illegal entry and smuggling. 422 U.S. at 884, 95 S.Ct. at 2582, 45 L.Ed.2d at 618, 619.

In *Brignoni-Ponce* the officers had relied "on a single factor to justify stopping respondent's car: the apparent Mexican ancestry of the occupants". This did not furnish reasonable grounds for the stop, 422 U.S. at 885–86, 95 S.Ct. at 2582.

In the instant case, the factors present supporting a "reasonable suspicion" to stop Roberto Macias' vehicle are many of the same illustratively cited by the Supreme Court.

First, the place involved is in close proximity to the border and the surrounding area is desolate and barren, with rough terrain. Second, it was approximately 4:25 a.m. in the morning, an hour when few travelers are about and when much illegal activity occurs. *See United States v. Walker,* 5 Cir. 1975, 522 F.2d 194. Third, the officers were aware that a "turn-around" had occurred only a short time before and that one of the two vehicles involved had been apprehended with a load of marijuana. *See United States v. Estrada,* 5 Cir. 1976, 526 F.2d 357. Fourth, it was likely that the second vehicle would be coming towards the Ysleta officers in the very direction from which Roberto Macias soon appeared. *See United States v. Canales,* 5 Cir. 1976, 527 F.2d 440. Fifth, the vehicle in which he was stopped was of the same type as the first vehicle which was carrying contraband. *See United States v. Maslanka,* 5 Cir. 1974, 501 F.2d 208, 213, *cert. den.,* 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777.

The involved roadblock which the appellant complains of was not set up at the whim of the Ysleta officers. The Ysleta officers, operating in conjunction with the officers maintaining the permanent checkpoint, were acting on information received from those officers. In view of the time, place and circumstances, and the alert received from the permanent checkpoint, the Ysleta officers had "reasonable suspicion" to stop any vehicle which came down that road *at that time.*

Further, Officer Milner, who followed the Travel-All to the roadblock, observed sufficient facts to provide a reasonable suspicion to support the stop.

With the propriety of the stop established, the odor of the marijuana coming from the Travel-All gave the officers prob-

able cause for the search. *United States v. Walker,* 5 Cir. 1975, 522 F.2d 194, 196; *United States v. Kidd,* 5 Cir. 1976, 540 F.2d 210, 212.

Accordingly, the convictions of both Raul and Roberto Macias are

AFFIRMED.