[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11475
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cv-00022-LGW-BWC


JOE T. YOUNG,

Plaintiff-Appellee,

versus

DAVID BRADY,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(November 7, 2019)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

David Brady, a game warden with the Georgia Department of Natural

Resources ("DNR"), appeals the district court's denial of his motion for summary judgment on qualified immunity grounds. He argues that the district court erred because he did not violate a Fourth Amendment right of the plaintiff, Joe Young, and even if he did, such a right was not clearly established.

The relevant facts are as follows. On August 27, 2017, Young parked his truck in a gravel parking lot underneath the bridge at Sidney Lanier Park and was resting inside of it. He had his windows up and a green- and grey-colored sleeping bag in the bed of his truck. Officer Brady parked his truck near Young's and approached, asking Young if he was "okay" and asking him to roll his window down. At this point, Young waved his arms at Brady, indicated that he didn't want to speak with him, and drove off at a slow speed. Brady walked back to his car and radioed in that Young was "pulling off" from him. Young drove, at most, several hundred feet away to another nearby parking lot in the Park. Brady pulled up behind him less than thirty seconds later.

After getting out of his truck, Brady approached Young, who was agitated, and confirmed that he was stopping him. Brady asked Young to get out of the vehicle and Young inquired as to why. After about a minute of back and forth, Young got out of the truck and Brady handcuffed him. He reached into Young's pocket, pulled out his wallet, and ran Young's driver's license. After uncovering no outstanding warrants or other issues, Brady uncuffed Young and allowed him to

2

leave.

Young filed suit against Brady in state court and represented himself pro se, alleging that while he was handcuffed, surgical sutures from a recent surgery were pulled out, causing him personal injury. Brady properly removed the case to the Southern District of Georgia. Young subsequently filed a motion for summary judgment, asserting that Brady had no "probable cause" to stop him, Brady acted unreasonably, and there was no genuine issue of material fact. Young filed a second motion for summary judgment, which largely reiterated and reincorporated the same arguments set forth in his first motion. Brady filed a cross-motion for summary judgment arguing, inter alia, that Young's claim was barred by the doctrine of qualified immunity. He argued that he had reasonable suspicion to stop Young because Young had a large bag in the bed of his truck, which appeared to be the type used by illegal palmetto berry harvesters in southern Georgia during that time of year; it was the middle of palmetto berry harvesting season; Young drove away from him; and Young exhibited "highly agitated and uncooperative behavior." In response to Brady's cross-motion for summary judgment—as well as the evidence that Brady submitted in support of his motion—Young filed a motion in limine to exclude all of Brady's evidence relating to palmetto berry harvesting.

The district court held a hearing on both parties' motions. During the

3

hearing, the court inquired as to what circumstances would make Brady suspect that Young was engaging in illegal palmetto berry harvesting. Brady's counsel responded that Brady was suspicious of Young's sleeping bag, which he apparently suspected was a bag used to harvest palmetto berries. He also pointed out that, although no berry harvesting occurred in Sidney Lanier Park, harvesting generally occurred in southern Georgia during that time of the year. This, he argued, combined with Young's departure, created the requisite arguable reasonable suspicion for Brady to stop Young. Young responded that Brady had never mentioned palmetto berries in any of his legal filings up until that point, and that Brady's counsel had violated the Federal Rules of Civil Procedure by failing to disclose any evidence relating to palmetto berries until discovery had closed. Following the hearing, Brady filed a supplement to his cross-motion for summary judgment, largely incorporating the arguments he made at the hearing.

The district court denied both motions for summary judgment, finding that Brady was not entitled to qualified immunity. It concluded that the "observance of an unfurled, flattened sleeping bag in the bed of a parked truck in a public park in the middle of the day is not a particularized and objective basis establishing reasonable suspicion of criminal activity—no matter what berry-picking season it is." It further concluded that Young driving away from Brady when Brady approached him was not enough to establish reasonable suspicion. Brady timely

4

appealed to us.[1]

On summary judgment, a district court's denial of qualified immunity is an immediately appealable collateral order if it solely concerns the pure legal decision of "(1) whether the implicated federal constitutional right was clearly established and (2) whether the alleged acts violated that law." Koch v. Rugg, 221 F.3d 1283, 1294 (11th Cir. 2000) (emphasis omitted).

We review de novo "a district court's disposition of a summary judgment motion based on qualified immunity, applying the same legal standards as the district court." Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003). We "resolve all issues of material fact in favor of the plaintiff and "then answer the legal question of whether the defendant is entitled to qualified immunity under that version of the facts." Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002) (quoting Thornton v. City of Macon, 132 F.3d 1395, 1397 (11th Cir. 1998)) (alterations omitted). Further, because we construe pro se pleadings liberally, for the purposes of our review here, "we state the facts as alleged in [plaintiff's] liberally-construed complaint, viewed in the light most favorable to him." Dixon v. Hodges, 887 F.3d 1235, 1237 (11th Cir. 2018). We do not limit our consideration of the evidence to undisputed facts based on local rules when the

---

[1] After this, the district court denied Young's motion in limine without prejudice because the case was on appeal, and left open the possibility that Young could refile the motion if we affirmed the denial of Brady's motion for summary judgment.

5

district court has not done so.  Atwater v. Nat'l Football League Players Ass'n, 626 F.3d. 1170, 1175 n.5 (11th Cir. 2010).

Qualified immunity protects a defendant from liability for a § 1983 claim arising from discretionary acts, "as long as the discretionary acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known."  Jackson v. Sauls, 206 F.3d 1156, 1164 (11th Cir. 2000).  Once an official demonstrates that he was performing a discretionary function, the plaintiff has the burden to prove that the defendant is not entitled to summary judgment on qualified immunity grounds.  Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

To show that a defendant is not entitled to summary judgment on qualified immunity grounds, the plaintiff must show that a reasonable jury could find both that the defendant violated a constitutional right and that the constitutional right was clearly established.  Id. at 1267.  We have held that

> [a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citations omitted).  "Exact factual identity with a previously decided case is not required," but rather, the key inquiry is whether the law provided the official with

6

"fair warning" that his conduct violated the constitution.  Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (quotation marks omitted).  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Id. (quotation marks omitted).  However, if there is no caselaw directly on point, general statements of the law and the reasoning of prior cases may provide fair warning of unlawful conduct if they "clearly apply" to the novel factual situation at issue.  Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005).

When an official asserts qualified immunity for an alleged Fourth Amendment violation, the question is not whether the official had actual reasonable suspicion, but whether the official had "arguable" reasonable suspicion.  Jackson, 206 F.3d at 1166.  In other words, we consider whether an official had reasonable suspicion as "an objective question viewed from the standpoint of a reasonable official at the scene" and based on the totality of the circumstances.  Hicks v. Moore, 422 F.3d 1246, 1252 (11th Cir. 2005) (quotation and internal marks omitted).  Whether an official has arguable reasonable suspicion is a question of law also reviewed de novo.  See Evans v. Stephens, 407 F.3d 1272, 1280 (11th Cir. 2005) (en banc).  We consider the totality of the circumstances "in light of the officer's own experience" and determine "whether the officer can point to specific and articulable facts which, taken together with rational inferences from

7

those facts" support an "objectively reasonable suspicion that [the defendant] had engaged . . . in a crime." United States v. Caraballo, 595 F.3d 1214, 1222 (11th Cir. 2010) (quotation marks omitted, alteration in original).

Under the Fourth Amendment, an official can address questions to a person at any time, and that person is free "to ignore his interrogator and walk away." United States v. Mendenhall, 446 U.S. 544, 554 (1980) (quotation marks omitted). However, an official may conduct a brief, investigatory stop, otherwise known as a "Terry stop," if he has a reasonable suspicion of criminal activity. See Jackson, 206 F.3d at 1165. Though reasonable suspicion is a less demanding standard than probable cause, the Fourth Amendment nonetheless requires a minimum level of objective justification for an official to make a Terry stop. Id. This objective justification must exist at the onset of the stop. Hiibel v. Sixth Judicial Dist. Ct. of Nev., 542 U.S. 177, 188 (2004). Objective justification does not exist based on a mere refusal to cooperate with the official. Florida v. Bostick, 501 U.S. 429, 437 (1991); Florida v. Royer, 460 U.S. 491, 498 (1983) (stating that a person approached by the police may decline to listen to the questions and go on his way without furnishing the necessary objective grounds for reasonable suspicion).

Unprovoked flight upon noticing the police, on the other hand, is different from a mere refusal to cooperate and can be grounds for reasonable suspicion. Illinois v. Wardlow, 528 U.S. 119, 125 (2000). "Obviously the speed of the

8

suspect's movements may be relevant in the totality of the circumstances," but the speed "does not itself change the analysis where it is evident from the circumstances that he was attempting to flee upon sighting the police."  United States v. Gordon, 231 F.3d 750, 757 (11th Cir. 2000).  Though departure from the scene does not necessarily indicate wrongdoing, "a reasonable suspicion of criminal activity may be formed by observing exclusively legal activity," and an officer may conduct a Terry stop to resolve any ambiguity between criminal and noncriminal behavior.  Id. at 754; Wardlow, 528 U.S. at 124-25 (stating that headlong flight suggests, but does not necessarily indicate, wrongdoing and that Terry recognized an officer's ability to detain individuals to resolve an ambiguity).

After a careful review of the facts—and after construing the facts in the light most favorable to the plaintiff—we affirm the district court's decision.  While arguable reasonable suspicion sets a low bar, we cannot say that Brady's actions here cleared it.

We begin by noting that Officer Brady was acting within his "discretionary authority" at the point that Young was seized because he "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."  Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004), and Young does not argue otherwise. Accordingly, the burden then shifts to Young to prove that (1) Brady

violated a constitutional right that (2) was clearly established at the time of the alleged violation.  Whittier v. Kobayashi, 581 F.3d 1304, 1308 (11th Cir. 2009).

Regarding the first element, we conclude that Brady violated Young's constitutional rights—specifically, Young's rights under the Fourth Amendment—when he seized him.  As a preliminary matter, Young was "seized" within the context of the Fourth Amendment when Brady approached his car for the second time, because a reasonable person would not have felt free to leave at that point. Mendenhall, 446 U.S. at 554.  Indeed, Officer Brady verbally confirmed to Young at this point—and not before—that he was pulling Young over.

The import of this conclusion is that, at this point, Brady must have reasonably believed that he had arguable reasonable suspicion to effectuate the investigatory stop.  Jackson, 206 F.3d at 1166.  In other words, he must have reasonably believed that "specific and articulable facts which, taken together with rational inferences from those facts," supported an "objectively reasonable suspicion that [the plaintiff] had engaged . . . in a crime."  See Hiibel, 542 U.S. at 188; Caraballo, 595 F.3d at 1222.

Brady's arguments that he had the requisite suspicion fit into three categories: (1) he suspected Young was engaging in illegal palmetto berry harvesting; (2) Young drove away from him when Brady first approached him; and (3) Young was belligerent when he was pulled over.  We can summarily dispose of

the third argument.  Brady was required to have arguable reasonable suspicion at the time that Young was seized, not thereafter.  Young's agitated demeanor was not apparent until after he was seized, and thus cannot be a basis for Brady's arguable reasonable suspicion.  We next address the first two arguments in turn.

First, we are unpersuaded by Brady's argument that his suspicions of illegal palmetto berry harvesting justified his seizure of Young.  His argument is essentially that this suspicion was justified merely because Young was in the general region of the state in which the illegal harvesting occurred, at around the time it occurred, and he had a sleeping bag in the bed of his truck.

In support of this argument, Brady points to, inter alia, an affidavit from Brian Clavier, the Chief of Law Enforcement for the Georgia Forestry Commission.  Clavier's affidavit explains that illegal palmetto berry harvesting primarily happens around Dixon State Forest, near Brunswick, Georgia, between August and October of each year, with a large percentage of the harvest occurring in August.  Along with his affidavit, Clavier submitted the DNR Law Enforcement Division's Weekly Report for the week of August 13, the week before Young's seizure.  The weekly report details a "bust" that took place on August 14, in which rangers recovered 1,800 pounds of palmetto berries near Waycross, Georgia.  The

11

report includes a picture of the bust, which shows brown and clear bags,[2] some of which had emblems on them, stuffed with palmetto berries.

Arguable reasonable suspicion requires more than Brady points to. The location of Sidney Lanier Park does not lend itself to arguable reasonable suspicion. The Park is located nearly 60 miles and over an hour away from Dixon State Forest, where the uncontroverted evidence shows that the overwhelming majority of the harvesting takes place. The Park is located a similar distance away from Waycross, the location of the only mentioned "bust" in the record. Indeed, Brady concedes that no illegal harvesting takes place at Sidney Lanier Park itself. **[Doc. 50 at 6–9.]**

Similarly, we find the date on which the seizure took place to be equally unpersuasive. Though we noted in <u>Caraballo</u>, 595 F.3d at 1222, that the time of year can be a factor in finding that reasonable suspicion of illegal harvesting existed, we did not hold that the time of year, standing alone, conferred reasonable suspicion where it otherwise did not exist.

But Brady's main argument here concerns Young's sleeping bag. He argues that he believed that the sleeping bag was the kind of bag used by illegal berry

---

[2] The copy of the Weekly Report in the record is in black-and-white, **[Doc. 44-4]**, but because the Weekly Report is easily accessible online, Ga. Dep't of Natural Res. Law Enforcement Div., <u>Weekly Report: August 13 – 19, 2017</u>, https://gadnrle.org/sites/default/files/le/pdf/LE-Reports/2017/August%2013th-August%2019th.pdf, we take judicial notice of the color of the bags based on the color pictures available online. <u>See</u> Fed. R. Evid. 201(b)(2).

12

harvesters.  We conclude that this argument doesn't track with the events depicted in the footage from his body camera.  Both times that Brady approached the truck, he obviously saw the sleeping bag lying on top of the truck bed—it was broad daylight and Brady got within three or four feet of the bag.  And though Brady's argument on appeal is that he needed to seize Young to further investigate the sleeping bag for potential palmetto berry harvesting, **[Blue Br. at 30]**, he got an equally good, if not better, look at the sleeping bag minutes earlier when he <u>first</u> approached Young's truck.  The footage shows Brady approaching Young's truck and getting close enough that he was able to put his hand on the driver-side window.  At that point, Brady was close enough to the bag that he undoubtedly would have been able to determine it was a sleeping bag.  Indeed, the footage shows that there was a tarp covering the bed of the truck, and the sleeping bag was lying on top of the tarp in plain view—it wasn't rolled up, instead completely unrolled and flat, lending itself to easy identification.

In any event, we doubt Brady's depiction of the events in question.  When he seized Young—that is, when he approached Young's truck for the second time—he did not so much as touch the sleeping bag.  And quite inconsistent with Brady's later testimony at the summary judgment stage, the sleeping bag did not appear in the footage to be stuffed with palmetto berries; rather, it was lying unrolled and flat.  Moreover, at the scene, the footage shows that Brady gave as his

reason for stopping Young that he was concerned Young was "okay"—a far cry from the reason given for the first time at summary judgment, i.e., that he was suspicious that Young was engaged in illegal palmetto berry harvesting.

Here, Brady's legal argument is that it is irrelevant that his suspicions turned out to be unfounded. Instead, he argues, "what matters is the objective reasonableness of the suspicion that led to the investigative detention before he could complete his investigation." **[Blue Br. at 29]** But this argument cuts against him. We determined earlier—and Brady doesn't contest—that Brady seized Young the second time that he approached Young's truck. By that point, Brady had already been quite close to Young's truck—indeed, close enough to touch the window—and was easily capable of determining that Young's sleeping bag bore no resemblance to palmetto berry harvesting bags. Therefore, by the time that Brady seized Young, there were no "objective facts" on which arguable reasonable suspicion could have been based, see United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008), and Brady could not have reasonably concluded otherwise.

Based on the totality of the circumstances, we conclude that Officer Brady did not have arguable reasonable suspicion that Young was engaged in illegal palmetto berry harvesting. Young's location in a general region of the state during the quarter of the year in which certain illegal activity takes place, coupled with an unfurled sleeping bag in the back of his truck, did not provide Brady with specific

14

and articulable facts that supported his suspicion.  Holding that these factors presented reasonable suspicion would simply cast too wide of a net.[3]

We next move to Brady's argument that he had reasonable suspicion because Young drove away when Brady first approached him.  As the district court found, Young drove away from Brady at a slow speed.  His brake lights were on as he drove away, indicating that he wasn't traveling very quickly, a point emphasized by the video footage.  After Brady exited the parking lot, Officer Brady walked back to his truck without any sense of urgency, and calmly informed his dispatcher, "Subject's pulling away from me."

We are mindful that the Supreme Court has held that a person approached by law enforcement is entitled to "ignore his interrogator and walk away." Mendenhall, 446 U.S. at 554.  Refusal to answer an officer's questions does not, without more, establish reasonable suspicion.  Royer, 460 U.S. at 498.  We have previously held, however, that the speed at which a defendant flees, and whether they engaged in "[f]light from law enforcement officials," factor into the totality of the circumstances.  Gordon, 231 F.3d at 757; United States v. Willis, 759 F.2d 1486, 1497 (11th Cir. 1985).

Here, based on the totality of the circumstances, we cannot say that Young's

---

[3] In this vein, the Sixth Circuit held in United States v. See, 574 F.3d 309, 314 (6th Cir. 2009), that "context-based factors that would have pertained to anyone" in a given area at a given time "should not be given undue weight."

15

short travel from the parking lot under the bridge in Sidney Lanier Park to a nearby parking lot created arguable reasonable suspicion.  To that end, we disagree with Brady's characterization that Young "fled" from Brady; the bodycam footage plainly shows that Brady drove off at a slow speed, parked a few hundred feet away from his original destination, and immediately yielded to Officer Brady once he realized that he was being stopped.[4]

After concluding that Brady violated Young's constitutional rights, we reach the second step of our qualified immunity analysis, where we question whether these rights were clearly established at the time of the violation.  Here, we again note that we conduct this inquiry "in light of the specific context of the case, not as a broad general proposition."  Coffin, 642 F.3d at 1013.  It is not in serious dispute that Young possessed the right to be free from an unreasonable search and seizure under the Fourth Amendment.  We also conclude that, in light of the specific context of this case, his right in this instance was also clearly established.

Viewing the facts in the light most favorable to Young, Brady did not have arguable reasonable suspicion to conduct a Terry stop.  A reasonable official at the scene would not have believed that illegal palmetto berry harvesting, or any other

---

[4] We also note that "flight" is different from merely walking or driving away.  The cases that we cited in Willis, 759 F.2d at 1497 n.4, are readily distinguishable from the conduct at issue here because they involved hasty, inherently suspicious activity, e.g., "hasty grabbing of bag and exiting after airport officials decided to search for weapons" and "making u-turn and driving away from border checkpoint."  759 F.2d at 1497 n.4 (citing United States v. Herzbrun, 723 F.2d 773 (11th Cir. 1984); United States v. Macias, 546 F.2d 58 (5th Cir. 1977)).

crime, was occurring based on Young sitting in his parked car in a public park with a sleeping bag on his truck bed and then, after waving away the approaching officer, driving away, slowly, to another parking lot not more than several hundred feet away in the same park. Therefore, Brady violated Young's Fourth Amendment right to leave a police encounter and not be stopped without reasonable suspicion. Furthermore, such a right was clearly established at the time because, even though there is no caselaw directly on point with the facts of this case, the general principle that a person can walk away from a mere police encounter is established by the caselaw, clearly applies here, and would give fair notice to Brady that Young waving him away and driving off was not enough to establish reasonable suspicion. Fourth Amendment caselaw clearly distinguishes between someone disinterestedly leaving a situation involving a police officer—as happened here—and someone "fleeing" from law enforcement. Compare Mendenhall, 446 U.S. at 553, with Willis, 759 F.2d at 1497.

Young has thus met his burden of showing that a reasonable jury could find that Brady violated a clearly established Fourth Amendment right. Accordingly, we conclude that the district court did not err in denying Brady's motion to dismiss on qualified immunity grounds.[5]

---

[5] In the course of Brady's appeal, Young filed a Motion to Incorporate Motion In Limine. As discussed earlier, the district court denied Young's motion in limine without prejudice and explicitly stated that it may reconsider his motion if we affirmed the district court's decision.

17

**AFFIRMED.**

---

Young did not appeal from this decision.  In any event, because his motion is outside the scope of this interlocutory qualified immunity appeal, we deny it without discussion.